IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| DANNY DAY, | ) CIVIL ACTION 4:06-3415-HFF-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART COMMISSIONER OF SOCIAL SECURITY, | ) ) ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I. PROCEDURAL HISTORY

Plaintiff filed his application for DIB on July 7, 2004, alleging disability since November 15, 2003. These applications were initially denied and upon reconsideration. A timely request for a hearing was filed on September 30, 2005. The plaintiff appeared and testified at a hearing held May

18, 2006, as well as a Vocational Expert (VE). On September 8, 2006, the ALJ issued a decision denying plaintiff's application for benefits.

Plaintiff had previously filed applications for DIB January 14, 2002, alleging disability since June 9, 2001, due to heart disease, open heart surgery, and stent placement (Tr. 83, 99, 214). His applications were denied initially and upon reconsideration. Following a hearing on August 13, 2003, the Administrative Law Judge (ALJ), F. W. Christian, found, in a decision dated November 14, 2003, that plaintiff was not disabled because he retained the residual functional capacity (RFC) for a range of sedentary[1] work and could perform other work that existed in the national economy. (Tr. 11-21). The Appeals Council denied plaintiff's subsequent request for review and the ALJ's decision became the Commissioner's "final decision" for purposes of judicial review under 42 U.S.C. § 405(g). The plaintiff filed a complaint with this Court on May 26, 2004 (C/A No.:4:04-cv-1683-MJP. The Court issued an order on September 30, 2005, adopting the undersigned's report and recommendation and remanding the case to the Commissioner for further administrative proceedings. The undersigned recommended that the case be remanded to resolve conflicts between the vocational testimony provided in the first hearing and the Dictionary of Occupational Titles (DOT). The ALJ stated in his decision of September 8, 2006, that "the Appeals Council directed that these subsequent applications be escalated and considered in my decision. Therefore, this decision will consider both sets of applications." (Tr. 236).

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time with occasional walking and standing as needed to carry out job duties. 20C.F.R. §§404.1567(a), 416.967(a) (2004).

## II. FACTUAL BACKGROUND

The plaintiff, Danny Day, was born on May 20, 1963, and was 40 years of age on the date of his hearing before the ALJ. (Tr. 83). He has a seventh grade education and past relevant work as a farm worker, bagger, car mechanic, heavy equipment operator, laborer, and maintenance laborer (Tr. 105, 109-115).

## III. DISABILITY ANALYSIS

The plaintiff's arguments consist of the following:

(1) The issue of the plaintiff's ability to do substantial work in significant numbers remains undetermined despite the testimony of the VE in the remand hearing.

(2) The ALJ failed to consider the Plaintiff's borderline intellectual functioning in his evaluation of the plaintiff's case.

(3) The ALJ did not explain his findings regarding the Plaintiff's residual functional capacity, as required by Social Security Ruling 96-8p.

(Plaintiff's brief).

In the decision of September 8, 2006, the ALJ found the following:

1. The claimant met the insured status requirements of the Social Security Act through June 30, 2004.

2. The claimant has not engaged in substantial gainful activity since June 9, 2001, the alleged onset of date (20 CFR 404.1520(b), 404.1571 et. Seq., 416.920(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: coronary artery disease, hypertension, atherosclerotic peripheral vascular disease, left shoulder impingement and degenerative joint disease (20 CFR 404.1520(c) and 416.920(c))

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift/carry 10 pounds occasionally and one to two pounds frequently; with no prolonged standing/walking; with no exposure to extremes of temperature/humidity; with no overhead work using the left upper extremity; and with no reading.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 20, 1962, and was 38 years old on the alleged disability onset date, which is defined as a younger individual age 18-44 (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education, is able to communicate in English and is illiterate (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-vocational rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a "disability," as defined in the Social Security Act, from June 9, 2001,

>     through the date this decision (20 CFR §§
>     404.1520(g) and 416.920(g)).

(Tr. 239-244).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence[2] and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial

---

[2]Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary.  20 C.F.R. § 404.1503(a).  Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).  An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied.  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  SSR 82-62.  The claimant bears the burden of establishing his inability to work within the meaning of the Social Security Act.  42 U.S.C. § 423 (d)(5).  He must make a prima facie showing of disability by showing she was unable to return to his past relevant work.  Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## IV. MEDICAL REPORTS

For background information, the medical records as set out in the previous case that was remanded are repeated herein:

Aiken Regional Medical Center (ARMC) provided medical records on the plaintiff from November 15, 2000, through January 8, 2002, that chronicled the patient's history of examination, diagnosis, treatment and surgery of unstable angina, coronary artery disease, hyperlipidemia, and associated problems. The medical records indicate the plaintiff was examined, x-rayed and operated on twice to clear severely blocked arteries and stents implanted in those arteries to keep them from collapsing. Following surgery, Dr. Ansermo L. Arthur, M.D., of Aiken Cardiovascular Associates treated the plaintiff with multiple prescriptive therapies, and advised him to follow-up with his appointments as recommended or as his condition warranted (Tr. 143-157).

Dr. Arthur provided medical records on the plaintiff from November 28, 2000, through June 12, 2003, that chronicled the patient's history of examination, diagnosis and treatment for coronary artery disease, hypertension, hyperlipidemia, and associated problems. Dr. Arthur indicated that the plaintiff continued to suffer from high blood pressure and high cholesterol. Dr. Arthur instructed

plaintiff to stop smoking or his condition would deteriorate. Dr. Arthur continued to treat the plaintiff with prescriptive therapy to try and regulate his conditions. (Tr. 158-169, 198-199).

On July 9, 2002, James J. Hill, Jr., M.D., of Carolina Orthopedic Associates performed an MRI of the plaintiff's left shoulder. The findings were tendonosis/tendonopathy involving the rotator cuff tendon complex (Tr. 178). On July 15, 2002, Dr. Hill found that plaintiff had significant impingement syndrome and multiple changes and teninosis of the rotator cuff (Tr. 177). On August 22, 2002, Dr. Hill performed surgery on plaintiff to remove impeding degenerative tissue in his left shoulder and followed up with prescriptive therapy. Dr. Hill advised plaintiff that his condition was not curable only manageable and urged him of the importance to continue his prescriptive therapy. (Tr. 144-176, 189-194).

Dr. Timothy Shannon provided medical records on plaintiff from September 26, 2002, through February 25, 2003, that chronicled the patient's history of examination, diagnosis, treatment and surgery of left knee instability secondary to an ACL (anterior cruciate ligament) tear and associated symptoms. Dr. Shannon indicated that plaintiff suffered from degenerative joint disease and the pain and problems associated with such disease. Dr. Shannon performed a left ACL reconstruction on the plaintiff and advised him to follow up with physical therapy. Dr. Shannon indicated that plaintiff complained that the pain was too severe to participate in physical therapy. Dr. Shannon treated plaintiff with prescriptive therapy and advised him to follow up regularly as recommended. On February 25, 2003, plaintiff informed Dr. Shannon that he was still having occasional functional giving away of the left knee and the physical exam revealed that plaintiff lacked 2-3 degrees of full extension but could flex the knee to 110 degrees. (Tr. 200-212).

## V. PLAINTIFF'S SPECIFIC ARGUMENTS

As previously stated, plaintiff argues that his case was originally remanded by this court in an order dated September 29, 2005, to resolve a conflict between the vocational expert testimony and the DOT. (Tr. 309). The report and recommendation that was adopted by the district judge found that the vocation testimony that the plaintiff could perform the jobs cited despite his illiteracy conflicted with the DOT information which indicated some reading level was required. It was concluded that the "ALJ must resolve this conflict before relying on the VE to support a determination or decision that the individual is or is not disabled. The ALJ should explain in the determination or decision how he resolved the conflict. The ALJ must explain the resolution of the conflict irrespective of how the conflict was identified. (SSR 00-4p)."  Plaintiff asserts that the VE did not testify as the ALJ alleged in his order and that the VE indicated that he could not provide an explanation of the conflict between his testimony and the DOT, and that an individual who could not read at least 2500 words would be a "low functioning individual" who would likely "struggle mightily in virtually any job setting." (Tr. 287). Thus, plaintiff argues that the VE never testified that someone who was illiterate could perform the jobs cited as the ALJ suggests. Therefore, plaintiff argues the case should be reversed and remanded for payment of benefits.

Defendant argues that the VE addressed the potential conflict between the DOT requirements and his testimony that an illiterate individual could perform the jobs by explaining that people unable to meet the requirements of language development level one would be "low-functioning" and would "struggle mightily in any job setting." Defendant asserts the ALJ reasonably concluded that plaintiff was not such an individual. Defendant argues there is no evidence in the record that plaintiff was low-functioning or would likely struggle in "any job setting."

A review of SSR 00-4p reveals that if there is a conflict between the VE testimony and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying upon the VE evidence to support a decision about whether a claimant is disabled. Specifically, SSR 00-4p reads as follows:

> This Ruling clarifies our standards for the use of vocational experts (VEs) who provide evidence at hearings before administrative law judges (ALJs), vocational specialists (VSs) who provide evidence to disability determination services (DDS) adjudicators, and other reliable sources of occupational information in the evaluation of disability claims. In particular, this ruling emphasizes that before relying on VE or VS evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor, and explain in the determination or decision how any conflict that has been identified was resolved.

(SSR 00-4p).

In reviewing the testimony, the following colloquy took place:

ALJ: Do either of those jobs you listed, either of those DOT citations, indicate in any way that, that reading is required or that a ceratin educational level, in terms of literacy I, is required?

VE: Those, those jobs each have a language development of one, which for reading purposes would be recognized as obviously the, the lowest category and that'll be recognizing the meaning of 2500 two or three syllable words, read at a rate of 95 to 120 words per minute, and compare similarities and differences between words and between series of numbers. Again, that's the lowest category.

The ALJ explained to the VE that if there was a conflict then he needed to explain the conflict. The VE testified that "I, I don't know that–have an explanation for that. Again, that's the most basic

category there is in terms of language development in the DOT ." Then in the decision, the ALJ stated as follows:

> The Vocational expert testified that while the Dictionary of Occupational Titles shows that the listed jobs require the ability to read, he has observed these jobs and they do not require reading in the real world of work. Because the vocational expert has personally observed these jobs, and since the Dictionary of Occupational Titles was last updated 15 years ago, I give greater weight to the vocational expert's more recent personal experience and direct observation of the jobs listed than to the 15-year-old, generic descriptions of these jobs in the Dictionary of Occupational Titles.

(Tr. 244).

As can seen above, the VE did not actually testify that he had personally observed the jobs cited and found that the jobs "do not require reading in the real world of work." (Tr. 244). As the plaintiff's counsel pointed out, while the ALJ's description of the VE testimony is factually incorrect, it is unlikely this error was intentional on the part of the ALJ. However, as the ALJ relied on this reasoning in his decision, the undersigned recommends that this case be remanded to the Commissioner for the ALJ to revisit this issue either by reviewing the file or having another hearing to clarify this matter.[3] If another hearing is held, it will be the third hearing in this matter. Thus, it

---

[3] The undersigned recognizes the case of Warf v. Shalala, 844 F.Supp. 285 (W.D. Va. 1994) which held that the "Administrative law judge was justified in concluding that claimant for supplemental security income benefits was not under disability even though such conclusion was based in part on vocational expert's conclusion that claimant was capable of performing job listed in Department of Labor's *Dictionary of Occupational Titles* and 'definitional requirements'" for that job required basic level of literacy; although claimant was illiterate, expert rendered his opinion based on illiteracy, claimant previously performed other jobs that also required minimal level of literacy, and claimant would not qualify for any job listed in *Dictionary* if minimal literacy requirement was adhered to." Id. The undersigned is not concluding that because the jobs listed were said to be at the lowest level for language development that plaintiff could not perform the jobs based on his illiteracy or that the ALJ is bound by the DOT "definitional requirements." The undersigned is concluding that there was a discrepancy between the ALJ's decision and the actual testimony of the VE that requires clarification.

is recommended that the Commissioner be required to expedite this matter. As it is recommended that this case be remanded as set forth above, the other arguments of the plaintiff will not be addressed.

## VI.  CONCLUSION

Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631 (c) (3) of the Social Security Act, 42 U.S.C. Sections 405 (g) and 1338 (c) (3), it is,

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 1, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**